01

02

03

04

05                     UNITED STATES DISTRICT COURT

06              FOR THE EASTERN DISTRICT OF CALIFORNIA

07
RICHARD WALKER,                    )
08                                 )
          Petitioner,              )     CASE NO. 2:07-cv-1178-RSL-JLW
09                                 )
          v.                       )
10                                 )
D. K. SISTO, *et al.*,             )     REPORT AND RECOMMENDATION
11                                 )
          Respondents.             )
12     _____ )

13        I.     SUMMARY

14        Petitioner Richard Walker is currently incarcerated at the Folsom State Prison in

15 Represa, California.  He pled guilty to one count of second degree murder and one count of

16 possession of methamphetamine for sale in Riverside County Superior Court on August 28,

17 1989.  He is currently serving a sentence of eighteen-years-to-life with the possibility of

18 parole and has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging

19 his 2005 denial of parole by the Board of Parole Hearings of the State of California (the

20 "Board").[1]  (*See* Dockets 1 and 9.)  Specifically, petitioner contends the Board's decision

21 violated his Fifth and Fourteenth Amendments due process rights, his Fourteenth Amendment

22 _____

        [1] The Board of Parole Hearings replaced the Board of Prison Terms, which was abolished on July 1,
2005.  *See* California Penal Code § 5075(a).

REPORT AND RECOMMENDATION  -  1

right to equal protection, his Eighth Amendment right to be free from cruel and unusual punishment, and the terms of his plea agreement.  The Court, having thoroughly reviewed the record and briefing of the parties, recommends the Court deny the petition and dismiss this action with prejudice.

II.      PROCEDURAL HISTORY

Because petitioner's federal habeas petition was difficult to decipher, the court granted respondent's motion for a more definite statement.  (*See* Dkts. 6-8).  Respondent filed a document clarifying his claims.  (*See* Dkt. 9.)  Respondent then filed an answer to the petition together with relevant portions of the state court record.  (*See* Dkt. 10.)  Petitioner filed a traverse in reply to the answer.  (*See* Dkt. 11.)  While the briefing is now complete and this matter is ripe for review, on May 30, 2008, the court issued an order to show cause why this case should not be administratively stayed pending the Ninth Circuit Court of Appeals' decision in *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008), *reh'g en banc granted*, 527 F.3d 797 (9th Cir. May 16, 2008).  (*See* Dkt. 12.)  The parties did not oppose the court's request for an administrative stay, with the qualification that petitioner did not want his case to be pending for more than six months.  (*See* Dkts. 13-14.)

United States Magistrate Judge Hollows issued a report and recommendation on August 27, 2008, recommending that this case be administratively stayed.  (*See* Dkt. 15.)  On November 25, 2008, before the court ruled upon the report and recommendation, it was transferred to Chief Judge Robert S. Lasnik and referred to the undersigned, as visiting judges.  (*See* Dkt. 17.)  Because it has been more than one year since oral argument was heard in *Hayward* and petitioner has had at least one subsequent parole hearing, now the subject of his second federal habeas corpus petition (Case No. 2:09-cv-00525 WBS-JFM), I recommend

REPORT AND RECOMMENDATION  -  2

01 the Court find that it is in the interests of justice to consider the merits of this case.  The

02 August 2008 report and recommendation should therefore be stricken as moot.

03       III.     STANDARD OF REVIEW

04       The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

05 petition as it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320,

06 326-27 (1997).  Because petitioner is in custody of the California Department of Corrections

07 pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive vehicle for his

08 habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.), *cert. denied*, 543

09 U.S. 991 (2004) (providing that § 2254 is "the exclusive vehicle for a habeas petition by a

10 state prisoner in custody pursuant to a state court judgment, even when the petitioner is not

11 challenging his underlying state court conviction.").  Under AEDPA, a habeas petition may

12 not be granted with respect to any claim adjudicated on the merits in state court unless

13 petitioner demonstrates that the highest state court decision rejecting his petition was either

14 "contrary to, or involved an unreasonable application of, clearly established Federal law, as

15 determined by the Supreme Court of the United States," or "was based on an unreasonable

16 determination of the facts in light of the evidence presented in the State court proceeding."  28

17 U.S.C. § 2254(d)(1) and (2).

18       As a threshold matter, this Court must ascertain whether relevant federal law was

19 "clearly established" at the time of the state court's decision.  To make this determination, the

20 Court may only consider the holdings, as opposed to dicta, of the United States Supreme

21 Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  In this context, Ninth Circuit

22

precedent remains persuasive but not binding authority.  *See Williams*, 529 U.S. at 412-13; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The Court must then determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all times, a federal habeas court must keep in mind that it "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be [objectively] unreasonable."  *Id.* at 411.

In each case, the petitioner has the burden of establishing that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine whether the petitioner has met this burden, a federal habeas court normally looks to the last reasoned state court decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).  Where, as in this case, the state courts issue summary denials without explaining their reasons, *see infra*, this Court must conduct an

independent review of the record to determine whether the state courts' decisions were contrary or involved an unreasonable application of Supreme Court holdings.  *See Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).

Finally, AEDPA requires federal courts to give considerable deference to state court decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1). Federal courts are also bound by a state's interpretation of its own laws.  *See Murtishaw v. Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713 (9th Cir. 1993)).

IV.    PRIOR STATE COURT PROCEEDINGS

The petition in this case incorporates claims raised in two separate state habeas petitions.  Respondent states that petitioner has properly exhausted his state court remedies, and timely filed the instant petition with regard to *all* claims, except those challenging petitioner's 2007 parole hearing.  (*See* Dkt. 10 at 3.)  Petitioner makes clear in his traverse that he is not challenging his 2007 parole denial in this petition.  (*See* Dkt. 11 at 2.)  Although respondent fails to specifically address petitioner's equal protection or cruel and unusual punishment claims, it is clear from the record that these claims were exhausted as they were properly presented to the state's highest court.  (*See* Dkt. 1.)  *See* 28 U.S.C. § 2254(b)(3); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *see also Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999) (holding that California law requires presentation of claims to the

0 California Supreme Court through petition for discretionary review in order to exhaust state

02 court remedies).

03       Typically, this Court looks to the state court's orders upholding the Board's decision

04 to determine whether they meet the deferential AEDPA standard. *See Ylst*, 501 U.S. at 803-

05 04. In this case, the Riverside Superior Court issued a one paragraph decision that does not

06 mention any of petitioner's constitutional claims. (*See* Dkt. 10, Ex. 7.) The second state

07 habeas petition filed in the Riverside Superior Court only raised the issue regarding the terms

08 of petitioner's plea agreement. (*See* Dkt. 10 at 3-4.) The superior court denied that claim

09 without comment. (*See id.*, Ex. 10.) As discussed *supra*, when a state court issues a decision

10 on the merits but does not provide a reasoned decision, we review the record independently to

11 determine whether that decision was objectively reasonable. *See Delgado*, 223 F.3d at 982.

12 Although our review of the record is conducted independently, we continue to show deference

13 to the state court's ultimate decision. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir.

14 2002).

15    V.     BACKGROUND

16       The 2005 Life Prisoner Evaluation, upon which the Board's 2005 report relies,

17 summarized the facts of the crime as follows:

18      On December 20, 1988, Walker along with another unknown male, contacted
the victim, David Ringo, to arrange a meeting. Walker suspected Ringo of
19      stealing his radio and wanted to confront Ringo about it. When they arrived at
the meeting location, Walker confronted Ringo about his radio. Ringo told
20      Walker he did not steal the radio and that he would not do something like that.
Walker then pointed a gun at Ringo and told him to get down on his knees.
21      Ringo pled for Walker not to shoot him. Walker told the other male who was
there to kick Ringo. Ringo then stood up and began running. Walker fired one
22      shot from the gun and Ringo fell to his knees collapsing face first on the

REPORT AND RECOMMENDATION - 6

ground.  It appeared that Ringo was not breathing and Walker then told the other male to get his pickup truck.  They loaded the body into the truck and subsequently dumped the body in some orange groves.  The workers of the ranch found the body the following day.

(Dkt. 10, Ex. 5 at 1 and Ex. 6 at 9-10.)

During the 2005 parole hearing, petitioner agreed with the above facts, with two exceptions -- he maintains that the victim stole much more than a radio from his garage and that he did not tell him to get down on his knees.  Instead, petitioner claims that he and the victim were physically fighting with each other and petitioner shot him in the right side of his back as he fell to the ground.  (*See* Dkt. 1, Ex. 6 at 11-16.)

Petitioner pled guilty to second degree murder with a firearm enhancement and possession for sale of methamphetamines on August 28, 1989, in Riverside County Superior Court.  (*See* Dkt. 10, Ex. 1.)  He began serving his sentence of eighteen-years-to-life with the possibility of parole on September 28, 1990.  (*See id.*, Ex. 6 at 1.)  His minimum eligible parole date was set for October 27, 2000.  (*See id.*)  Petitioner has now been incarcerated for approximately nineteen years for this offense.

The parole denial, which is the subject of this petition, followed a parole hearing held on August 30, 2005.  It is unclear from the record how many prior parole consideration hearings occurred, although it appears from a subsequently filed petition that this was his third parole application and that all prior applications have been denied.[2]

---

[2]  In 2007, after this petition was filed, petitioner had a fourth parole consideration hearing.  The Board denied petitioner a parole release date.  As discussed *supra*, his habeas corpus petition challenging that decision is currently pending before the United States District Court for the Eastern District of California in Case No. 2:09-cv-00525-WBS-JFM.

REPORT AND RECOMMENDATION  -  7

VI.    FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

       A.    *Due Process Right to be Released on Parole*

       Under the Fifth and Fourteenth Amendments to the United States Constitution, the government is prohibited from depriving an inmate of life, liberty or property without the due process of law.  U.S. Const. amends. V, XIV.  A prisoner's due process claim must be analyzed in two steps: the first asks whether the state has interfered with a constitutionally protected liberty or property interest of the prisoner, and the second asks whether the procedures accompanying that interference were constitutionally sufficient.  *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

       Accordingly, our first inquiry is whether petitioner has a constitutionally protected liberty interest in parole.  The Supreme Court articulated the governing rule in this area in *Greenholtz v. Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482 U.S. 369 (1987).  *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying "the 'clearly established' framework of *Greenholtz* and *Allen*" to California's parole scheme). The Court in *Greenholtz* determined that although there is no constitutional right to conditionally released on parole, if a state's statutory scheme employs mandatory language that creates a presumption that parole release will be granted if certain designated findings are made, the statute gives rise to a constitutional liberty interest.  *See Greenholtz*, 442 U.S. at 7, 12; *Allen*, 482 U.S. at 377-78.

       As discussed *infra*, California statutes and regulations afford a prisoner serving an indeterminate life sentence an expectation of parole unless, in the judgment of the parole

authority, he "will pose an unreasonable risk of danger to society if released from prison." Title 15 Cal. Code Regs., § 2402(a).  The Ninth Circuit has therefore held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*, 306 F.3d at 902.  To similar effect, *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held that California Penal Code § 3041 vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause."  This "liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  *See also Sass*, 461 F.3d at 1127.

Because the Board's denial of parole interfered with petitioner's constitutionally-protected liberty interest, this Court must proceed to the second step in the procedural due process analysis and determine whether the procedures accompanying that interference were constitutionally sufficient.  "[T]he Supreme Court [has] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record.'" *Irons*, 505 F.3d at 851 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard applies in prison disciplinary proceedings)).  The "some evidence" standard requires this Court to determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.  Although *Hill* involved the accumulation of good time credits rather than release on parole, later cases have held that the same constitutional principles apply in the parole context because both situations

01 directly affect the duration of the prison term. *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d

02 1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme

03 Court in *Hill* in the parole context); *accord*, *Sass*, 461 F.3d at 1128-29); *Biggs*, 334 F.3d at

04 915; *McQuillion*, 306 F.3d at 904.

05        "The fundamental fairness guaranteed by the Due Process Clause does not require

06 courts to set aside decisions of prison administrators that have some basis in fact," however.

07 *Hill*, 472 U.S. at 456.  Similarly, the "some evidence" standard is not an invitation to examine

08 the entire record, independently assess witnesses' credibility, or re-weigh the evidence. *Id.* at

09 455.  Instead, it is there to ensure that an inmate's loss of parole was not arbitrarily imposed.

10 *See id.* at 454.  The Court in *Hill* added an exclamation point to the limited scope of federal

11 habeas review when it upheld the finding of the prison administrators despite the Court's

12 characterization of the supporting evidence as "meager."  *See id.* at 457.

13        B.       *California's Statutory and Regulatory Scheme*

14        In order to determine whether "some evidence" supported the Board's decision with

15 respect to petitioner, this Court must consider the California statutes and regulations that

16 govern the Board's decision-making.  *See Biggs*, 334 F.3d at 915.  Under California law, the

17 Board is authorized to set release dates and grant parole for inmates with indeterminate

18 sentences.  *See* Cal. Penal Code § 3040 and 5075, *et seq.*  Section 3041(a) requires the Board

19 to meet with each inmate one year before the expiration of his minimum sentence and

20 normally set a release date in a manner that will provide uniform terms for offenses of similar

21 gravity and magnitude with respect to their threat to the public, as well as comply with

22 applicable sentencing rules.  Subsection (b) of this section requires that the Board set a release

date "unless it determines that the gravity of current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." *Id.*, § 3041(b).  Pursuant to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release dates" which take into account the number of victims of the offense as well as other factors in mitigation or aggravation of the crime.  The Board has therefore promulgated regulations setting forth the guidelines it must follow when determining parole suitability.  *See* 15 CCR § 2402, *et seq.*

Accordingly, the Board is guided by the following regulations in making a determination whether a prisoner is suitable for parole:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 CCR § 2402(a) and (b).  Subsections (c) and (d) also set forth suitability and unsuitability factors to further assist the Board in analyzing whether an inmate should be granted parole,

0  although "the importance attached to any circumstance or combination of circumstances in a

02  particular case is left to the judgment of the panel." 15 CCR § 2402(c).

03        In examining its own statutory and regulatory framework, the California Supreme

04  Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is

05  "whether some evidence supports the *decision* of the Board … that the inmate constitutes a

06  current threat to public safety, and not merely whether some evidence confirms the existence

07  of certain factual findings."  *In re Lawrence*, 44 Cal.4th 1181, 1212 (2008).  The court also

08  asserted that the Board's decision must demonstrate "an individualized consideration of the

09  specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability

10  factors that forms the crux of the parole decision; the significant circumstance is how those

11  factors interrelate to support a conclusion of current dangerousness to the public."  *Id.* at

12  1204-05, 1212.  As long as the evidence underlying the Board's decision has "some indicia of

13  reliability," parole has not been arbitrarily denied.  *See Jancsek*, 833 F.2d at 1390.  As the

14  California courts have continually noted, the Board's discretion in parole release matters is

15  very broad.  *See Lawrence*, 44 Cal.4th at 1204.  Thus, the penal code, corresponding

16  regulations, and California law clearly establish that the fundamental consideration in parole

17  decisions is public safety and an assessment of a prisoner's current dangerousness.  *See id.*, at

18  1205-06.

19        C.      *Summary of Governing Principles*

20        By virtue of California law, petitioner has a constitutional liberty interest in release on

21  parole.  The parole authorities may decline to set a parole date only upon a finding that

22  petitioner's release would present an unreasonable present risk of danger to society if he is

released from prison.  Where the parole authorities deny release, based upon an adverse

finding on that issue, the role of a federal habeas court is narrowly limited.  It must deny relief

if there is "some evidence" in the record to support the parole authority's finding of present

dangerousness.  The penal code, corresponding regulations, and California law clearly support

the foregoing interpretation.

VII.    PARTIES' CONTENTIONS

Petitioner's first argument is that the so called "some evidence" standard is the

appropriate standard of review.  (*See* Dkt. 9 at 4.)  As discussed in Section VI, *supra*, the

Court agrees and therefore does not address this contention further.  Petitioner also contends

that the Board's finding violated his Fifth and Fourteenth Amendment due process rights

because it is not supported by "some evidence" of his dangerousness if he were to be released

on parole.  (*See id.*)  In addition, he claims that his due process rights were violated when the

Board relied on a deputy prosecutor's opinion regarding his suitability because he contends all

prosecutors are required to oppose parole pursuant to the "Lifer Hearing Manual."  (*See id.*)

Next, he asserts that the Board's finding violated his Eighth Amendment right to be free from

cruel and unusual punishment and his Fourteenth Amendment right to equal protection.

Finally, he contends the Board's finding violated the terms of his plea agreement.  (*See id*.)

Respondent claims that petitioner does not have a constitutionally protected liberty

interest in being released on parole, that the "some evidence" standard is inapplicable in this

context, and that even if he does have a protected liberty interest, the Board adequately

predicated its denial of parole on "some evidence."  (*See* Dkt. 10 at 7-13.)  Accordingly,

respondent argues that petitioner's constitutional and contractual rights were not violated by

0    the Board's 2005 decision, and that the Riverside County Superior Court's Order upholding

02   the Board's 2005 parole denial was not an unreasonable application of clearly established

03   federal law.  (*See* Dkt. 10. at 13-14.)

04        VIII.   ANALYSIS OF RECORD IN THIS CASE

05        A.    *Commitment Offense*

06            The Board based its decision that petitioner was unsuitable for parole primarily upon

07   his commitment offense, as well as upon his escalating pattern of criminal activity prior to his

08   incarceration, his unstable social history, his failure to profit from society's previous attempts

09   to correct his criminality, his institutional behavior, and his insufficient participation in anger

10   management or self-help programming.  (*See id.*, Ex. 6 at 75-80.)  As to suitability factors, the

11   Board noted that petitioner had upgraded vocationally, developed marketable skills, and had

12   strong family support.  (*See id.*)  The Board's findings track the applicable unsuitability and

13   suitability factors listed in § 2402(b), (c) and (d) of Chapter 15 of the California Code of

14   Regulations.  After considering all reliable evidence in the record, the Board concluded that

15   petitioner was not suitable for parole.  (*See id.*)

16            With regard to the circumstances of the commitment offense, the Board concluded that

17   this crime was carried out in an especially cruel, callous, dispassionate, and calculated

18   manner, demonstrating an exceptionally callous disregard for human suffering, and that the

19   motive for the crime was inexplicable or very trivial in relation to the offense.  (*See id*. at 75.)

20   *See* 15 CCR § 2402 (c)(1)(B), (D), and (E).  As mentioned above, petitioner shot the victim in

21   the back after concluding that he had stolen some things from petitioner's garage.  He then

22   disposed of the body by dumping it in an orchard.  The evidence of the circumstances

REPORT AND RECOMMENDATION  -  14

0   surrounding petitioner's commitment offense and the trivial motive provide some evidence to

02   support the Board's finding that the murder was carried out in an especially heinous,

03   atrocious, or cruel manner.

04       The second factor cited by the Board to deny parole was petitioner's escalating pattern

05   of criminal activity or violence.  (*See* Dkt. 10, Ex. 6 at 76.)  Petitioner does not have a

06   previous record of violence, however, his criminal history does show an increasing pattern of

07   serious crimes, including a prior prison commitment for burglary, and several physical

08   altercations for which he does not appear to have been charged.  (*See id.*, Ex. 4 at 5 and 7.)

09   The applicable guidelines direct the Board to consider all relevant and reliable information,

10   which includes a prisoner's involvement in any criminal misconduct which is reliably

11   documented.  *See* 15 CCR § 2402(b).  Thus, the Board properly considered petitioner's prior

12   criminal record and its findings regarding petitioner's prior criminality is therefore supported

13   by "some evidence."

14       The third unsuitability factor relied upon by the Board was petitioner's unstable social

15   history.  (*See* Dkt. 10, Ex. 6 at 76-77.)  An "unstable social history" is defined as a "history of

16   unstable or tumultuous relationships with others."  *See* 15 CCR § 2402(c)(3).  The Board cited

17   petitioner's "numerous arrests" and "the colleagues that [he] ran with" to support this factor.

18   (Dkt. 10, Ex. 6 at 76-77.)  Petitioner's prior arrests were the basis of the Board's finding of

19   "escalating criminal activity," and provide nothing additional to support a finding of "unstable

20   social history."  As to the persons with whom petitioner associated, petitioner admits that

21   prior to this conviction he associated with a group of individuals who were involved with

22

REPORT AND RECOMMENDATION  -  15

0   alcohol and drugs.  But this fact, without more, does not provide "some evidence" to support

02  the Board's finding that petitioner had a history of unstable or tumultuous relationships.

03          The fourth factor cited by the Board was petitioner's failure to profit from society's

04  previous attempts to correct his criminality, such as prior grants of probation and parole.  (*See*

05  Dkt. 10, Ex. 6 at 77.)  Petitioner's criminal record provides "some evidence" to support this

06  finding.  (*See id.* at 16-25 and Ex. 4 at 5.)

07          The fifth and sixth factors cited by the Board were petitioner's institutional behavior

08  and his failure to participate in anger management or self-help programming.  The Board first

09  commended petitioner for remaining disciplinary-free since 1999, noting that he had brought

10  his classification score down to 19, which is the lowest number possible.  (*See id.*, Ex. 6 at

11  32.)  Nevertheless, petitioner's initial behavior in prison included several serious rule

12  violations, such as drug trafficking, intoxication, fist fighting, inciting a racial disturbance,

13  and refusing to submit to a urinary analysis.  (*See id.*)  In addition, petitioner reacted

14  defensively when the Board questioned him regarding how he had changed in prison and how

15  he would react today if someone stole from him again.  (*See id.* at 39-47.)  It concluded that

16  petitioner had not participated in any anger management courses and that his behavior during

17  the hearing demonstrated that he still needed to address this.  (*See id.* at 78-79.)  Accordingly,

18  there is "some evidence" to support the Board's finding that petitioner has engaged in some

19  serious misconduct while in jail and that he needs to participate in anger management or self-

20  help programming.

21          As stated above, it is beyond the authority of a federal habeas court to determine

22  whether evidence of suitability outweighs the circumstances of the commitment offense,

REPORT AND RECOMMENDATION  -  16

0   together with any other reliable evidence of unsuitability for parole.  The Board has broad

02  discretion to determine how suitability and unsuitability factors interrelate to support its

03  conclusion of current dangerousness to the public.  *See Lawrence*, 44 Cal.4th at 1212.  In this

04  case, the Board noted petitioner's progress, but concluded that he needed additional time to

05  demonstrate his suitability for parole.  The Board's findings are therefore supported by "some

06  evidence" in the record.

07          B.      *District Attorney's Opposition to Parole*

08          Petitioner contends that his due process rights were violated when the Board relied

09  upon the Deputy District Attorney's opposition to his parole, an opposition that he suggests

10  was guided by the District Attorney's "Lifer Hearing Manual."  (*See* Dkt. 1, Ex. A, Petition

11  filed in the California Supreme Court, Issue II, and Dkt. 9 at 4.)  Petitioner's claim, at its core,

12  challenges the Board's reliance upon any input provided by deputy district attorneys during

13  parole release hearings.  Pursuant to California Penal Code Regulation § 3041.7, a prosecutor

14  may attend a parole hearing to represent "the interests of the people."  In the absence of other

15  reliable evidence of unsuitability in the record, opposition by law enforcement based upon the

16  nature of the commitment offense does not constitute "some evidence" to support parole

17  denial.  *See Rosenkrantz v. Marshall,* 444 F. Supp. 2d 1063, 1080 n.14 (C.D. Cal. 2006)

18  (providing that where a district attorney and sheriff's department opposed parole based solely

19  upon the gravity of the commitment offense, their opposition did not constitute "some

20  evidence" because it was "merely cumulative" of the Board's findings regarding the offense).

21  Because the Board relied upon other reliable evidence of petitioner's unsuitability for parole,

22

0   however, its additional consideration of law enforcement's opposition, whether or not it was

02  informed by the "Lifer's Hearing Manual," was not arbitrary and capricious.  *See id*.

03          C.      *Violation of the Eighth Amendment*

04          Petitioner argues that the Board's decision to deny him a parole release date

05  constitutes cruel and unusual punishment in violation of the Eighth Amendment.  The United

06  States Supreme Court has held that a life sentence is constitutional, even for a non-violent

07  property crime.  *See Rummel v. Estelle*, 445 U.S. 263, 274 (1980)(holding that "the length of

08  the sentence actually imposed is purely a matter of legislative prerogative"); *Harmelin v.*

09  *Michigan*, 501 U.S. 957, 962-64 (1990).  Accordingly, a life sentence for a murder such as

10  that committed by petitioner would not constitute cruel and unusual punishment.  *See Banks v.*

11  *Kramer*, 2009 WL 256449 (E.D. Cal. 2009)(unpublished) (holding that a Board's refusal to

12  release a prisoner who was sentenced to sixteen years-to-life for murder does not constitute

13  cruel and unusual punishment).  Thus, the Board's decision did not violate petitioner's Eighth

14  Amendment right.

15          D.      *Violation of the Equal Protection Clause*

16          Petitioner also contends that his right to equal protection under the Fourteenth

17  Amendment was violated when the Board found him unsuitable for parole.  (*See* Dkt. 1 at 25-

18  26, Ex. BB at 4(f)- (i), and Dkt. 9 at 4.)  Petitioner appears to contend that his imprisonment

19  should be similar to other prisoners with "offenses of similar gravity and magnitude."  (*See id.*

20  at 25.)  The petition offers little analysis in support of his claim, and respondent fails to

21  address this issue on the merits.  (*See id.* and Dkt. 10.)  California law does not require the

22  Board to conduct a comparative analysis of the period of confinement served by other

REPORT AND RECOMMENDATION  -  18

0  prisoners with similar crimes, nor does it require it to refer to the sentencing matrices.  *See In*

02  *re Dannenberg*, 34 Cal.4th 1061, 1083-84 (2005) (holding whether an inmate poses a current

03  danger is not dependent on whether his commitment offense was more or less egregious than

04  other, similar crimes).  Instead, the Board is required to review the specific facts of each case

05  and to make an individualized determination as to whether that prisoner is suitable for parole.

06  *See In re Lawrence*, 44 Cal.4th at 1221.  Nevertheless, petitioner's conclusory allegations,

07  without more, fail to establish an equal protection violation.  The Court therefore finds "some

08  evidence" in the record to support the Board's decision and finds no constitutional violation

09  occurred.

10            E.      *Violation of the Plea Agreement*

11            Petitioner contends that the Board's decision to deny him a parole release date violated

12  his understanding of his plea agreement with the prosecuting attorney.  (Dkt. 9 at 4.)  While

13  the basis for petitioner's claim is not entirely clear from the petition, it appears petitioner

14  believes he was promised a nine-to-ten-year sentence.  (Dkt. 1, Ex. B.)  Other than

15  petitioner's allegations, he fails to present any evidence that the prosecutor promised

16  petitioner that he would be released on parole at any particular time.  It is petitioner's burden

17  to show he is entitled to issuance of a writ.  *See Silva v. Woodford*, 279 F.3d 825, 835 (9th

18  Cir. 2002) (it is petitioner's burden to show custody is in violation of the constitution).  This

19  court may not grant habeas relief based upon petitioner's unsupported belief he would be

20  released at a time certain.  The Court, again, finds "some evidence" in the record to support

21  the Board's decision and finds no constitutional violation occurred.

22

IX.     CONCLUSION

        Given the totality of the Board's findings, there is "some evidence" in the record that petitioner's release date as of the Board's August 30, 2005, decision would have posed an unreasonable risk to public safety.  The Riverside County Superior Court's Order upholding the Board's decision was therefore not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of facts.  Because the Board and the state courts' ultimate decisions were supported by "some evidence," there is no need to reach respondent's argument that another standard applies.  Accordingly, I recommend the Court find that petitioner's constitutional rights were not violated, that the petition be denied and that this action be dismissed with prejudice, and that the August 2008 report and recommendation be stricken as moot.

        This Report and Recommendation is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with this Report and Recommendation, any party may file written objections with this Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation."  Failure to file objections within the specified time may waive the right to appeal the District Court's Order. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  A proposed order accompanies this Report and Recommendation.

        DATED this 26th day of June, 2009.

                                        /S/ JLW

                                        _____
                                        JOHN L. WEINBERG
                                        United States Magistrate Judge

REPORT AND RECOMMENDATION - 20